JOHN LUBY *vs.* GARRET COX.

An indenture of apprenticeship, though not authorized by the "act concerning apprentices and servants," or not conformable thereto, is not *void*, but *voidable only.*

*It seems* that a statement in the indenture of the *approbation* of a justice and his certificate, that it was executed in his *presence*, is not sufficient; he should certify that it was with his approbation.

COVENANT on articles of apprenticeship. Plea, non est factum. Issue.

This was an action of covenant on an indenture of apprenticeship, brought by the apprentice against the master. The declaration assigned the following breaches of the master's covenants: 1st. That he did not teach him his trade. 2d. That he did not procure and provide him with sufficient meat, drink, lodging and washing. 3d. That he did not well support and clothe him.

To this declaration the defendant pleaded non est factum, and *it was agreed by the parties, through their counsel,* that under this plea the court should try the question, whether the indenture be a nullity or such a deed as will sustain the plaintiff's action for covenant broken. The indenture was therefore given in evidence, and admitted by consent under this issue. It bore date the 25th day of July, 1827, when the apprentice was twelve years and one month old, and appeared to have been executed by the parties to this suit, and the mother of the plaintiff before Outten Davis, a justice of the peace. The instrument, with the certificate of the justice, was in the following words:

" This indenture witnesseth, that John Luby, aged twelve years and one month, by and with the advice and consent of his mother, Sarah Luby, and in the presence and with the approbation of Outten Davis, one of the justices of the peace in and for the county of New Castle, hath put himself, and by these presents doth voluntarily and of his own free will and accord, put himself apprentice to Garret Cox, of St. George's hundred and county aforesaid, to learn the art, trade, and mystery of a wheelwright, &c. &c., (in usual form,) the boy to serve, and the master to well support and clothe him, to give him reasonable education in reading and writing, and in arithmetic to the single rule of three inclusive, excluding vulgar and decimal fractions, and at the expiration of the term aforesaid, the said master shall

give to the said apprentice two suits of clothes, one of which shall be new. " And for the performance of all and singular, the covenants and agreements aforesaid, the said parties bind themselves each unto the other firmly by these presents. In witness whereof, the said parties have interchangeably set their hands and seals hereunto. Dated 25th July, A. D. 1827.

JOHN LUBY, [*Seal.*]
SARAH LUBY, [*Seal.*]
GARRET COX, [*Seal.*]

Sealed and delivered in the presence of

JAMES H. BURNHAM,
OUTTEN DAVIS.

*New Castle county, ss.* I do hereby certify that the within inden-ture was executed before me the subscriber, one of the justices of the peace in and for said county, in due form of law. In testimony whereof, I have hereunto set my hand this 25th July 1827.

OUTTEN DAVIS."

It was contended by the defendant's counsel, that the indenture and all the covenant's contained in it, as well those on the part of the master as those on the part of the apprentice, were *absolutely void* by the 15th section of the act of the 5th February, 1827, " concern-ing apprentices and servants," which provides that " any *binding* of a minor as an apprentice or servant, made (as this was) after the first day of June, 1827, and not authorized by or conformable to this act, *shall be void ;*" and that the indenture was void by the 4th sec-tion of the act. The terms of the indenture, by which the apprentice *binds himself with the assent of his mother,* instead of her expressly binding him ; and the form of the certificate of the justice, which does not state his approbation of the binding, otherwise than as that ap-probation can be collected from his attestation to an instrument which recites it as a fact; constituted the objections taken to the validity of the indenture. On the other hand, the plaintiff's counsel contended, on the authority of the cases in *Douglass,* 518 ; 5 *Cowen,* 170 ; 8 *Modern,* 190, (to which the court referred during the progress of the argument,) that this was in law a binding by the mother, as she had in legal construction adopted the covenants and language of her son, and therefore was in conformity with the 2d section of the act which enables the mother, where there is no father or guar-dian, to bind her son : that the statement of the fact that the justice approved the binding contained in the body of the indenture, and at-tested by the justice himself, was a sufficient note or certificate, not only of the presence but of the approbation of the justice, *to satisfy*

the requisites of the clause in the 5th section of the act in regard to the execution of the indenture. He also contended that the master, after receiving the benefit of the apprentice's services, could not avoid the deed. The defendant's counsel cited, in support of his positions, the 2d, 4th, and 15th sections of the act, and *Platt on Covenants,* 576 ; 1 *Anstruther's Reports,* 256, *Guppy* vs. *Jennings.*

By the Court.—LAYTON, *Justice,* dissenting.

J. M. CLAYTON, *Chief Justice.*—Regularly, under the plea of non est factum in this case, perhaps nothing could have been contested but the execution of the indenture. But it is agreed by the counsel that the deed shall be tested as fully on this issue as if the objections to it had been specially pleaded, and these questions had been presented on a demurrer to such a plea.

The act is positive that the presence and *approbation* of the justice must appear by a certificate or note *under his own hand.* Sec. 4. That does not appear in this case. We are not satisfied that the other objections are available. But admitting now that the indenture is justly open to one of the objections which have been taken to it, and that the binding is invalid, because not authorized by or conformable to the act, we are still quite clear that in this action brought by the apprentice himself against the master, and in the absence of all pretence from these pleadings now before us, of any desertion of the master or other failure by the apprentice to fulfil his indenture, the covenants sued upon are *not* to be considered as void. The 15th section of the apprentice act, which enacts that " any binding of a minor as an apprentice or servant, and any assignment of a person being, according to this act, an apprentice or servant, and not authorized by and conformable to this act, shall be void," must be construed in connection with the very section immediately preceding it, and the 4th section of the act must be construed in reference to both. The 14th section in substance provides that, if any person being held as an apprentice or servant, by virtue or *color* of any indenture or deed, shall have cause of complaint against his or her master, for cruelty, ill-usage, bad treatment, breach of contract, *the invalidity of the binding,* or other sufficient matter, such person may prefer a petition for relief to the court, the chancellor, or any judge in the county wherein the master resides, setting forth such cause of complaint; and that the tribunal so applied to shall issue a summons for the master to answer such complaint, and " *shall have power* to discharge the petitioner from his apprenticeship or servitude, or to order the master to assign the petitioner to some other master, if the apprentice or servant be assignable, or to pay the costs, and to compel obedience to any such order by attachment

and imprisonment. This section then empowers the said court, chancellor or judge, to annex and make a part of any order or decree in the premises, *any terms* which shall be deemed just or equitable, or to give directions concerning the treatment of the petitioner; *and if the said court, chancellor or judge, shall be of opinion, that for the invalidity of an indenture, or deed of apprenticeship or servitude, or of an assignment thereof, or for other cause a petitioner ought to be discharged, but that he or she ought nevertheless to be bound as an apprentice or servant; in such case the said court, chancellor or judge, shall have power,* AFTER PRONOUNCING SUCH DISCHARGE, *to proceed and bind the said petitioner an apprentice or servant by indenture or deed, &c.* This section then prescribes the mode of avoiding an indenture by an apprentice for invalidity of the binding, and it is the binding only which the next section makes void for non-conformity with the previous provisions of the act. Construed together, as all parts of the same act must be, which are in reference to the same subject matter, it is evident that even the apprentice himself cannot treat his indenture as absolutely void for invalidity of the binding, although " void " is the word used in the 15th section; for the application to the court or judge for relief would be nugatory, or at least unnecessary, if the apprentice might, without the aid of the court, the chancellor or judge, hold his indenture void and plead non est factum, or demur to it in an action upon it for covenant broken. The indenture is voidable for invalidity of the binding arising out of a defective execution and not void, even when the apprentice seeks to annul it. It can be avoided by the court, the chancellor, or judge, on a proper application, by reason of its invalidity, and the apprentice may be bound again after his discharge is pronounced; or any terms which the court or judge applied to may deem just or equitable, may be annexed to and made part of the order. These excellent provisions in the act would be utterly unavailing were we to hold the indenture absolutely void, even as against the apprentice, and without them great injury would be very often sustained by the masters of apprentices, who would be thus deprived of their services whenever a defect in the form or attestation to an indenture (which often happens in cases of binding by justices of the peace) should be discovered. Under our present practice, authorized by the 14th section of this act, we rebind the apprentice to his master whenever nothing is complained of but a formal defect in the first binding, and it is equitable to do so. Were his indenture absolutely void, this could not be done in any case without the renewed assent of himself, or his parent or guardian.

There are many cases where an instrument is declared to be void

by positive statute, and in the strongest terms, yet where the courts have uniformly construed the term as synonymous with voidable. Thus the 26th section of the statute of 5th *Elizabeth,* chapter 4, directs that an indenture of apprenticeship shall not be made for a less term than seven years, and the 41st section provides " that all indentures, *covenants and bargains* of, or for the having or taking an apprentice, otherwise to be made or taken than is by that statute ordained, shall be *clearly void in law to all intents and purposes.* Yet, in *Gray* vs. *Cookson,* 16 *East.* 25-6-7, it was admitted by the plaintiff's counsel, and held by Lord Ellenborough, Willes and Ashurst justices, on the authority of *The King* vs. *The inhabitants of St. Nicholas, in Ipswich, Burr. Settl. Cases, No.* 28, *p.* 91, and 2 *Strange* 1066, that the indenture, though for less than seven years, was *voidable* only and not *void.* In the case " between the parishes of St. Nicholas and St. Peter, in Ipswich, (2 *Strange* 1066,) the 41st section of the *stat.* 5. *Eliz. c.* 4, was insisted on to support an order of sessions—but the court said, " the word *void* must be construed *voidable,* as on the *stat. Westminster* 2nd. *finis ipso jure sit nullus,* it is yet a discontinuance. *Hob.* 166. And on 23 *Henry* 6, *c.* 13, you must plead specially and cannot avoid a bail bond on *non est factum.* Here the indenture has had its effect, and neither master nor servant have taken advantage of the objection ; and as to the case of *Cureden* and *Laland,* on the *stat.* 8 *Ann, chap.* 9, (which is the case in 2 *Strange* 903, where an indenture was declared void because the duty of 6*d.* in the pound was never paid by the master,) the court distinguished this case from that, by saying there were words, (to wit: in the *stat.* 8 *Ann., ch.* 9, § 39,) prohibiting the giving the indenture in evidence." It has been held in construction of the *stat.* 5 *Eliz. chap.* 4, that the apprentice must avoid the deed by quitting his master's service, where the binding was for less than seven years. This was the view taken in the case of *Guppy* vs. *Jennings, Anstruther's Rep.* 256, which has been cited at the bar. That was an action by the master against the father, who in an indenture for five years only, had covenanted that his son should serve the plaintiff during that time, and that he (the father) should find his son in clothes and medicine. The defendant pleaded performance of his covenants till a certain day, when the apprentice *quitted the service* of the plaintiff, and *so avoided the deed.* On demurrer to this plea the court held it good, not on the ground that the indenture was void in its inception or creation, but clearly because it was voidable by the apprentice, who had avoided it by *quitting the service* of his master. M'Donald, chief baron, therefore, well said, " these covenants (meaning those of the father for the son,) are completely dependant upon the principal agreement, and must fall to the

ground *when it is avoided.* So too, *Hotham,* baron, and *Thompson,* baron, viewing the indentures as completely avoided by the act of the apprentice in quitting the service, pronounced the deed, under those circumstances, to be *void;* but manifestly it was not their intention to apply this language to the deed before it had been avoided. And the whole case, instead of proving that the deed was void *ab initio,* shows that both court and counsel held it voidable only until the desertion of the apprentice; and that the only question was whether the deed was absolutely void, *as against the father, in a suit by the master,* after the apprentice had avoided it. The fact which made the voidable deed void, to wit: the quitting the service of the master was, therefore, specially pleaded in bar to the action; which would have been very idle had the deed been void without it. And in accordance with this settled construction of the *stat. of Eliz.,* is the declaration of *Mansfield,* chief justice, in the case of *Gye* vs. *Felton,* in 4 *Taunton* 877. That was an action for harboring an apprentice whose indenture was declared void by the statute, because the master to whom he was bound was not a house-keeper, and of the age of twenty-four years. The court held the action could not be maintained; because, besides the clause above recited, making the indenture " clearly void to all intents and purposes," it is in the same section further provided " that every person taking an apprentice contrary to the tenor and true meaning of that act, shall forfeit and lose for every apprentice so by him taken, the sum of £10: so making it not only void as against the master, but unlawful, and therefore, it became impossible that the master could recover damages for the violation of a supposed right, originating only in a contract which the law forbade. *Mansfield,* chief justice, in delivering the opinion of the court says " the words in the statute declaring the indenture clearly void to all intents and purposes," certainly do at first startle one. Yet there have been (says he,) many cases cited, which say that indentures which do not conform to the act shall be only voidable and not void. *If,* (he continues,) *the word voidable were applied to adults, it would be extremely strange : with respect to infants,* if applied to them, one can understand it. In all those cases, the question arose *with respect to the rights of infant apprentices ;* but there has been no case cited, where the doctrine that the contract is voidable, not void, is applied to the case of a master, and it would be very wonderful if there were. The decision in *Smith* vs. *Birch,* 1 *Sess. Ca.* 222, is in coincidence with the principle of this case, it being held that where the master took a *deed poll* instead of an *indenture* of apprenticeship, in non-conformity with the *stat.* 5 *Eliz. c.* 4, § 25, he

could not maintain an action upon it, against a person for enticing away and detaining his apprentice.

We are, therefore, of opinion; that, on the showing now made, the action of the apprentice on this indenture against the master is sustainable : and, in this view of the case, it becomes unnecessary to anticipate what other questions may arise during the trial. The case when opened before the jury, may be presented in a very different aspect : but on the issue of non est factum before us at present, let there be

Judgment for the plaintiff.